# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARVAY SMITH, <br><br> Plaintiff, <br><br> v. <br><br> JOHN POTTER, Postmaster General, <br> United States Postal Service, <br><br> Defendant. | No. 02 C 4813 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arvay Smith, a distribution window clerk at the Chicago Post Office, complains of age and disability discrimination by her employer on five separate occasions. The alleged discriminatory events took place between May 16, 2000 and May 11, 2001, and involved instances in which Smith's supervisors or managers assigned her to certain work areas; refused to accept leave forms submitted by Smith's son; and provided Smith with forms listing an incorrect code. The Defendant United States Postal Service has moved for summary judgment. In response, Smith submitted a single document entitled "Plaintiff's Rebuttal to Barbara Holman's Deposition." Because Smith has failed to present admissible evidence disputing the facts offered by the Postal Service,[1] I grant the Postal Service's motion for summary judgment.

Smith is a 57-year-old postal worker who complains of a variety of physical and mental impairments including psychological distress, short-term memory loss, dizziness, heart

---

[1] I have reviewed the facts alleged in Smith's typewritten and signed rebuttal to the deposition of her supervisor, Barbara Holman. As I explain later in this decision, these unsupported allegations are not sufficient to rebut the facts provided by the Postal Service, and supported by affidavit, in its Motion for Summary Judgment.

palpitations and hypertension. In her position as a distribution window clerk, Smith works from 3:30 A.M. to noon, a schedule and position that she requested. Her job requires that she perform a combination of the functions of a distribution clerk and a window clerk. Distribution clerks sort and distribute incoming mail in preparation for delivery by mail carriers. Window clerks provide service to customers who come to the post office to purchase stamps, send packages, rent post office boxes, or purchase other services. Smith's job description also requires her to "[p]erform [] other duties, as assigned" by her supervisors, including "miscellaneous office clerical duties incident to the personnel, accounting, and other administration of the office." Smith believes that the Postal Service discriminated against her based upon her age and disability on five separate occasions:

> (1) on May 16, 2000, her supervisor sent her to work in the "Postage Due Business Reply 80" area despite the fact that Smith expected to work in the window services area;
> (2) on May 25, 2000, she was instructed to work in the "Section 6, Window/Distribution" area rather than the "cage accountable" area;
> (3) on September 20, 2000, Smith's tour superintendent, rather than her immediate supervisor, filled out Smith's workers' compensation claim form (Form CA-2);
> (4) on May 8, 2001, a supervisor refused to accept Smith's incomplete Form 3971, requesting time off from work, when Smith's son presented it for approval; and
> (5) on May 11, 2001, Smith received a personnel form (Form 50) reporting the fact that Smith had taken leave without pay exceeding 30 calendar days and showing that an internal accounting code called a "pay location" code had changed.

On May 16, 2000, when Smith reported for work at 3:30 in the morning, two other employees were already working in the window services area. Barbara Holman, the Tour Superintendent, directed Smith's supervisor to have Smith work in another area, the Postage Due/Business Reply 80 area (the "Postage Due area") until the clerks already working the window services finished their shifts. According to Holman's affidavit, she made this decision to

avoid overstaffing. Holman further avers that her decision was also based on her knowledge of Smith's prior training and experience in the responsibilities of the Postage Due area, and the fact that the Postage Due area was located in the same building as the window services area. Holman states that she assigned Smith to the Postage Due area in part to avoid the need for Smith to leave the main post office building in the middle of the night only to return a few hours later when her duties at the window services area would begin.

Smith objected to working in the Postage Due area, claiming that her job description did not include these duties. Smith believes that Holman discriminated against her on the basis of her age and disability when she refused to replace one of the clerks working in the window services area with Smith, when Smith arrived for work. In her rebuttal to Holman's deposition, Smith appears to allege that she had priority over these clerks for the assignment and that Holman was trying to drive her out of her assigned position. However, she offers no admissible facts in support of these allegations.[2]

The May 25, 2000 incident involved similar circumstances. On this morning, Holman directed Smith to begin her shift distributing mail in the Carrier Annex, and to work in the window services area only after other employees ended their shift. Holman avers that she gave this instruction based on Smith's earlier objection to working in the Postage Due area. Smith responded by asking to work in the cage accountable area, a secured area where distribution clerks give carriers registered, certified, express and other forms of "accountable" mail. Holman refused this request, because other employees were already working in this area and once again, Smith's presence would have resulted in overstaffing. Holman suggested that Smith change her

---

[2]Further, the two clerks whom Smith wished to replace were both more than 40 years old.

3

"start time" to 7:00 AM, rather than 3:30 AM; this change would have allowed Smith to begin her shifts working in the window services area. Smith rejected this proposal.

Following these incidents, Smith did not report to work for more than a year and a half, from June 2000 through March 4, 2002. Smith used her sick and annual leave time in order to take a leave of absence. When these ran out, she took leave without pay. During her absence, Smith submitted a workers' compensation claim form, Form CA-2, claiming that workplace stress had caused her to experience "headaches, temporary memory loss, dizziness, nervousness, apprehension, etc." The CA-2 form is a federal government form that requires the employee's supervisor to provide basic biographical information regarding the employee making the claim and the agency employing the claimant. The supervisor must also describe any changes to the employee's work duties and must certify that the statements the employee and supervisor made are true to the best of the supervisor's knowledge.

On September 20, 2000 Superintendent Holman completed the supervisor's portion of Smith's CA-2 form. Holman avers that she completed the form because she was sufficiently familiar with Smith to do so, and because Smith had left the form to be completed. Smith complains that Holman's completion of the form constitutes discrimination as only Smith's immediate supervisor, Annie York, should have completed the form. However, at Smith's request, York completed another copy of the supervisor's section of the form a few days later. As the Postal Service notes, Form CA-2 requires a "supervisor" to respond; it does not explicitly require that the form be completed by the employee's immediate supervisor.

Smith also complains that the Postal Service discriminated against her when another supervisor, Sarita Ragland, refused to accept an incomplete form delivered to the post office by

Smith's son. Employees taking time off are required to complete and submit Form 3971, Request for or Notification of Absence. Smith sent her son to deliver this form to her supervisors on May 8, 2001. When her son delivered the form, the supervisor on duty noticed that Smith had not indicated the number of hours off she was requesting. The supervisor refused to accept the form, telling Smith's son to have his mother complete and re-submit the form. Smith faxed a completed form to the post office two days later. The Postal Service accepted this form.

Finally, Smith complains that approximately one year after she last reported for work, she received a Notification of Personnel Action, Form 50, showing that the Postal Service changed her "pay location" code and indicating that she had taken in excess of 30 calendar days of leave without pay. The Postal Service avers, and Smith has offered no evidence to the contrary, that the pay location code is an internal accounting code that has no effect on an employee's compensation. The Postal Service changed the code to make Smith's code consistent with the code assigned to the majority of the other distribution window clerks on Smith's tour. Smith has offered no evidence demonstrating how the notations on the form harmed her, other than alleging that it is evidence of age and disability discrimination.

*Defendant's Motion for Summary Judgment*

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could

find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Postal Service has moved for summary judgment on the ground that Smith has not raised a genuine issue of material fact suggesting that she was subject to discrimination.

In order to establish a *prima facie* case of discrimination, Smith must plead that she suffered from an adverse employment action. An adverse employment action is "one that significantly alters the terms and conditions of the employee's job," and is "not merely an inconvenience or a change in job responsibilities." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (finding that employer's decisions to change employee's shift and to assign additional work that employee believed was beyond her responsibilities were not materially adverse). Nothing Smith alleges qualifies as an adverse action. She cannot establish that the Postal Service discriminated against her merely because it asked her to perform duties other than the window clerk duties she preferred, particularly when her job description provides that she must "[p]erform[ ] other duties, as assigned."

Smith, who remains employed with the Postal Service, has offered no evidence that she suffered actionable harm when Superintendent Holman assigned her to work in the Postage Due area on May 8, 2000 or required her to complete distribution duties other than those in the cage accountable area on May 25, 2000. The "temporary assignment of undesirable duties does not constitute an adverse employment action, especially where those duties are a part of the employee's job description." *Rhodes v. IDOT*, 243 F. Supp. 2d 810, 818 (N.D. Ill. 2003). Smith alleges that she was assigned to undesirable duties on only two discrete occasions; both the nature of those duties and their duration place them well outside the ambit of an adverse action.

6

Nor do Smith's three claims related to the processing of various employment forms constitute adverse employment actions. First, Smith has offered no evidence that she suffered any harm when Holman signed the CA-2 workers' compensation form, particularly when Smith's immediate supervisor, Annie York, subsequently completed another copy of the same form. Second, supervisor Ragland's failure to accept Smith's incomplete Form 3971 caused Smith (and her son) a minor inconvenience at most. When Smith submitted the form via fax just a few days later, her petition was approved. Smith did not offer any evidence that the form was improperly rejected or that she suffered anything more than an inconvenience as a result of this two-day delay. Finally, Smith has offered no evidence of any harm resulting from the modification to her pay location code, or from the fact that her Form 50 reported that her leave without pay had exceeded 30 calendar days.[3]

Even if the events Smith alleges could, somehow, constitute materially adverse employment actions, the Postal Service has offered a legitimate, non-discriminatory reason for each of the actions of which Smith complains. To prevail, Smith must "rebut . . . [these] legitimate reason[s] and establish that a discriminatory motive was the determining factor behind the . . . [Postal Service's] action[s]. *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999). The Postal Service assigned Smith to areas other than the window services area and the cage accountable area that Smith preferred because Smith reported to work at a time when other employees were already performing these jobs. The Postal Service contends that assigning Smith to the same position would have resulted in overstaffing. The Postal Service also contends that

---

[3]Smith admitted in a deposition that she has no complaint regarding the notation indicating in excess of 30 days leave without pay, though she did complain about the change in the pay location code.

Holman filled out Smith's CA-2 form after Smith left the form for completion because Holman was one of Smith's supervisors, albeit not Smith's immediate supervisor. Additionally, the Postal Service states that it rejected Smith's Form 3971 at the time her son submitted the form because it was not complete. Finally, Smith's Form 50 pay location code was changed to give Smith the same pay location as other distribution window clerks on her tour; moreover, the form correctly reported that Smith had taken more than 30 calendar days of leave without pay at the time the form issued.

Smith has failed to offer admissible evidence to rebut these non-discriminatory explanations. She failed to submit a response to the Postal Services' Motion for Summary Judgment and did not submit a Rule 56.1 Statement. However, Smith did provide a signed, typewritten statement entitled "Plaintiff's Rebuttal to Barbara Holman's Deposition." In this document Smith asserts that the explanations offered by Holman and the Postal Service are pretexts for discrimination. The crux of Smith's allegations seems to center around the Postal Service's intended and/or actual distribution of work assignments to employees with lesser seniority than Smith's; Smith appears to allege a concerted campaign by Holman and other supervisors to divest her of rightfully-earned positions and compensation.[4] However, the

---

[4] See *Plaintiff's Rebuttal to Barbara Holman's Deposition* at ¶ 6 (Holman insisted that subordinate supervisors enforce schedule changes); at ¶ 8 (Plaintiff denied premium pay due to schedule change); at ¶ 12 (Holman discriminated in allocating overtime assignments; overstaffing defense offered by Postal Service is pretextual; Plaintiff was asked to do work another employee should have done; Plaintiff was replaced by junior employee); ¶ 14 (allegation of pretext: Holman "never performed a work analysis . . . before determining whether or not 3:30A.M. 'was certainly not the busiest time of day for window services area'"); and ¶ 14 (alleging that Holman offered the 7:00 A.M. start time in the hope that certain preferred bids would be vacated and passed on to other employees). The document also alleges numerous other factual inconsistencies in Holman's deposition, but without any offer of proof that would support Smith's version of the events.

document contains nothing more than unsubstantiated allegations. What Smith does offer is her opinion as to what was going on in Holman's mind. Smith does not offer any specific statements made by Holman (witnessed by anyone) or offer evidence of any action by Holman that justifies her inferences. Smith failed to offer any admissible evidence to rebut the Postal Service's proffer of legitimate, non-discriminatory reasons for the five actions of which she complains. Rather, she has attempted to read Holman's mind, and this she is not competent to do. The Postal Service is entitled to Summary Judgment.[5]

For these reasons, Defendant's Motion for Summary Judgment is GRANTED.[6]

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 26, 2005

---

[5] Because I grant Defendant's Motion for Summary Judgment on other grounds, I need not reach the issue of whether Smith's condition constitutes a disability under the ADA and *Toyota Motor Mfg, KY, Inc. v. Williams*, 534 U.S. 184 (2002).

[6] Having granted Defendant's Motion, Plaintiff's Motion for Appointment of Counsel is DENIED.